UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD COLEMAN,

        Plaintiff,                                      Case Number: 08-12993
                                                                Honorable Julian Abele Cook, Jr.

v.

CANTON TOWNSHIP, CANTON TOWNSHIP
DIRECTOR OF PUBLIC SAFETY, JOHN
SANTOMAURO, CANTON TOWNSHIP POLICE
OFFICER TIMOTHY WRIGHT, OFFICER JUSTIN
ARMINIAK, OFFICER BRANDON HAYFORD,
OFFICER MICHAEL QUINN, OFFICER WILKS,
OFFICER GAZIE AND JOHN DOE AND MARY ROE,

        Defendants.

---

ARNOLD COLEMAN,

        Plaintiff,

                                                                 Case Number: 09-14245
                                                                 Honorable Julian Abele Cook, Jr.

v.

CANTON TOWNSHIP, JOHN SANTOMAURO,
DEPUTY CHIEF GOLLES, LT. MUTCHLER, SGT.
HARDESTY, DET. TIMOTHY WRIGHT, CANTON
TOWNSHIP POLICE OFFICERS JUSTIN ARMINIAK,
OFFICER BRANDON HAYFORD, OFFICER MICHAEL
QUINN, OFFICER WILKS, OFFICER GAZIE AND PSSO
DONALDSON, BRENDA SUPICA, RICK POMORSKI,
MONICA DUCKWITZ, DARREN KOSSICK, MIKE
STECKEL, DAVID SCHREINER, RUSSELL AVERILL,
DUANE LOWE, JOEL CUNNINGHAM, BRIAN
FITZGERALD, SANDY KELLER, and JOSH MEIER.

        Defendants.

---

## ORDER

Both of the above-captioned lawsuits arise out of allegations by the Plaintiff, Arnold Coleman, that the Defendants, Canton Township, et al., had been subjected to various violations of his fundamental rights under the United States Constitution, in violation of 42 U.S.C. § 1983. According to the Plaintiff, his claims in the second lawsuit, Case No. 09-14245 ("*Coleman* II"), stem from a deceitful attempt by the Defendants to conceal the wrongdoing that occurred in the first lawsuit, Case No. 08-12993 ("*Coleman* I").

There are four matters currently pending before the Court. First, In *Coleman* I, the Plaintiff filed a motion, which if granted, would result in the entry of a default judgment against the Defendants for their alleged wilful destruction and concealment of evidence, as well as their "perpetration of fraud on the Court," and other purported abuses of the directives from this Court. On the other hand, the Defendants have asked the Court for the entry of a summary judgment as to all claims in the complaint in *Coleman* I.

In *Coleman* II, the Defendants have filed (1) a motion to consolidate *Coleman* II with the claims in *Coleman* I, and (2) a motion to strike the first amended complaint by the Plaintiff in *Coleman* II without permission from the Court. Each of these requests will be considered in turn below.

I.

The Plaintiff, Arnold Coleman, is an African-American male who was arrested by the Canton Township (Michigan) Police Department following his altercation with his Caucasian roommate, William Jamison. At the time of the incident, both men were apparently residents at Light House, a residential drug treatment facility in Plymouth, Michigan. The parties disagree sharply about the course of events. Unfortunately, an exceptionally acrimonious discovery process has frustrated the development of an accurate factual record. Therefore, the Court will summarize the parties' respective

views about the circumstance which surrounded the Plaintiff's arrest and detention.

According to Coleman, he and Jamison began an argument over five dollars that Jamison allegedly owed to him. In Coleman's judgment, Jamison appeared to be under the influence of drugs and/or alcohol, and was behaving aggressively. In an effort to avoid further confrontation, Coleman turned to walk away from Jamison. However, Jamison grabbed Coleman's hand and continued to argue, and later poked him in the head while holding a coffee mug in his hand. Coleman admits that he struck Jamison, but claims that he did so in self defense. Their altercation continued with these two men ending up on the ground, with Coleman holding Jamison down. Coleman says that he asked a witness to the fight, Kevin Moore, to call the police. Coleman also contends that he needed medical treatment after being badly cut on his finger.

Coleman says that he heard Moore tell the operator that he witnessed the fight and that Jamison provoked the Plaintiff by coming after him with a coffee mug. Coleman further notes that he also talked to the 911 operator and explained his version of events, including his need for medical care. He submits that Jamison initially refused to speak with police.

When emergency medics arrived from the Canton fire department, Coleman notes that one of them wrapped his finger in gauze and advised him to have it examined by a doctor at the hospital. When the paramedic asked Coleman if he wanted to be taken to the hospital by ambulance, he refused and signed a "Refusal of Medical Treatment / Transport" form. The medic gave Coleman directions to the nearest hospital along with a form that was signed by him. Coleman claims that following the departure of the emergency medical team, officers from the Canton police department placed him under arrest for assault and battery. Coleman claims that these officers ignored his protestations that (1) Jamison had attacked him, and (2) he needed to go to the hospital before being incarcerated.

Upon his arrival at the police station, a different paramedic examined Coleman's finger, gave

3

him more gauze and obtained his signature on another form (indicating that he had treated Coleman's finger). The paramedic left, and Coleman explained to the booking officer that he took medication for high blood pressure and depression. However, the officers did not honor his repeated requests to call his wife, who would have brought him his medication. This is a contention that none of the officers on duty at the time of Coleman's arrest recall.

Moreover, according to Coleman, several Caucasian prisoners incarcerated after him were allowed to use the telephone and were interviewed, arraigned, and released, all while Coleman remained in custody. Approximately forty-nine hours later, and never having been interviewed by a detective, he was arraigned and released on a five-thousand dollar personal bond. According to Coleman, a medical doctor later told him that his failure to receive immediate medical attention for the lacerated tendon in his finger had resulted in the loss of his ability to use that digit. He claims that, through the course of litigation, he learned that the Canton Township police department had policies which required someone to (1) reexamine whether his injury should have been treated by a doctor instead of a paramedic, and (2) inform him during the booking process that he could use the telephone.

The Defendants' recitation of the facts differs markedly from the Plaintiff's. Based on a combination of internal investigation reports and Jamison's deposition testimony, they collectively note that on the date of Coleman's altercation with Jamison, Officer Brandon Hayford was the first law enforcement officer to arrive at the Light House. He found Jamison bleeding from the chin and head. According to Jamison, he had an argument over five dollars with Coleman, who ripped a coffee mug out of Jamison's hand and struck him in the face with it. Jamison also recalled Coleman punching him two or three times with his fist. According to Hayford, Jamison looked "woozy" and noted that he had lost consciousness. The officer observed a blood-covered piece of the coffee mug stuck to Jamison's chest. He spoke with Kevin Moore, who claimed that he knew the men were fighting but did not see

4

it. After discussing the matter with other officers, Hayford decided to arrest Coleman based on his belief that Coleman was the aggressor in the fight.

Justin Arminiak, another officer at the scene, indicated that Coleman advised him that Jamison had provoked him into punching him in the face. When Coleman went to punch Jamison a second time, Jamison blocked the punch with the coffee mug. Arminiak's investigation revealed blood on the floor, along with a broken piece of the coffee cup containing multiple strands of what appeared to be Jamison's hair. According to Arminiak, Moore told him Jamison provoked Coleman and that he saw Coleman hit Jamison in the face. However, he claimed he did not witness the altercation involving the coffee mug. Inasmuch as Coleman complained about his finger en route to the police station, he asked for paramedics to come to the police department to treat the injury. Arminiak denied that Coleman spoke to him about his other medical conditions, and claimed that race did not play a factor in his decision to arrest Coleman.

Detective Timothy Wright reviewed the police reports and submitted the case for review to the prosecutor's office. Based on Wright's efforts, the Wayne County Prosecutor's Office issued an arrest warrant and felony complaint which charged Coleman with felonious assault and domestic violence. Nevertheless, the case was ultimately dismissed because Jamison did not appear at a preliminary hearing to provide testimony against Coleman.

The parties agree that Coleman, acting through counsel, sent a letter dated April 11, 2008 to the police department in which he complained about his unfair treatment. The letter sought a financial settlement and prompted the Canton police department to conduct an internal investigation. However, the Defendants claim that Coleman refused to provide a statement to assist with their investigation.

Coleman notes that on May 14, 2008, the Defendant, John Santomauro, responded to Coleman's letter by noting that the department had undertaken a "thorough and complete" investigation and found

5

his allegations to be without merit.[1] Coleman now identifies several alleged defects within that investigative process, including (1) Santomauro's knowledge that several officers deliberately gave false information about the circumstances of Coleman's arrest, especially regarding Moore's statements (2) Santomauro's deliberate disregard of knowledge that Moore had written a statement which clearly indicated that Coleman had been provoked by Jamison, (3) the wilful destruction of the audio and video recording of Coleman's forty-nine hour incarceration, despite the department having notice of his complaint and lawsuit, (4) the wilful destruction of physical evidence from the broken pieces of the coffee mug, and (5) the wilful destruction of the 911 recordings that captured his original statements as well as those from Moore.

These material facts provide the framework for the analysis by the Court on the pending motions.

II.

In *Coleman* I, the Plaintiff asks the Court to enter a default judgment against the Defendants as a sanction for what is perceived by him to be a deliberate destruction and/or concealment of critical evidence in this case, as outlined above. Coleman contends that the coffee mug, audio-video surveillance of his incarceration, and the 911 calls were all central to his ability to establish exactly what happened before, during, and after his arrest. He notes that because the Defendants were on notice of his potential lawsuit as early as April 11, 2008, their subsequent destruction of this evidence reflects a bad faith that must be punished by the most extreme sanction.

The parties correctly note that a civil litigant has an affirmative duty to preserve evidence or information when it has notice that the material may be relevant to a future litigation. *John B. v. Goetz,*

---

[1] The statements in the letter were apparently based on a written report that was prepared by Lieutenant Mutchler.

531 F.3d 448, 459 (6th Cir. 2009). The parties also appear to agree that the Defendants' duty to preserve evidence was triggered upon their receipt of Coleman's April 11, 2008 pre-suit letter. And, both litigants correctly note that before the ultimate sanction of a default judgment may be imposed, a district court should find "(1) that Defendant acted willfully or in bad faith; (2) that Plaintiff was prejudiced by Defendant's conduct; and (3) that lesser sanctions would not serve . . . punishment-and-deterrence goals . . . ." *Helmac Products Corp. v. Roth (Plastics) Corp.*, 814 F. Supp. 560, 572 (E.D. Mich. 1992) (citing *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131 (S.D. Fla. 1987)). Here, the Court finds that Coleman has not met the burden as to any of his claims, inasmuch as he cannot show that the Defendants acted wilfully or in bad faith. Although Coleman continues to lodge accusatory allegations that the Defendants acted intentionally and with malice in destroying evidence, he has failed to identify facts which would allow the Court to reasonably and independently conclude that his contention is justified. To the contrary, the Court is persuaded by evidence in the record which suggests that, for example that (1) the audio-video recording of his incarceration would have been automatically purged within ninety days,[2] long before he sent notice of his lawsuit, (2) the date upon which the Defendants destroyed the broken pieces of the coffee mug has not been established, and, more importantly, has not been shown to have occurred after April 11, 2008, and (3) Coleman has not established that the recordings of the 911 calls have been destroyed. Rather, it appears that Coleman received these items prior to the close of discovery. Considered together, these factors make it clear that Coleman has not met his burden of proving wilfulness or bad faith.

---

[2]The Court is aware of prior statements, made by the Defendants in response to interrogatories, that the audio-video surveillance system in the jail purges itself after one year, not 90 days. However, the Court finds that, for the purposes of resolving this motion, the affidavit provided by Arminiak is more persuasive than the interrogatory responses, inasmuch as they are more detailed and more directed towards the precise issue under consideration by the Court.

7

Furthermore, these rather moderate and plausible explanations for the Defendants' handling of the evidence undercut his claim. Thus, the Court finds Coleman's application for sanctions, and specifically for the entry of a default judgment, to be unfounded.

Moreover, the Court finds the Defendants' allegedly belated disclosure of the internal investigation report of Lieutenant Mutchler to be harmless inasmuch as the Court has given the parties an opportunity to conduct further discovery in a separate order. If necessary, Coleman can depose the witnesses and inspect the documents that have been identified in Mutchler's report, and use that information as a basis for supporting his claims. Thus, Coleman's request for the entry of a default judgment against the Defendants on this basis, must be, and is, denied.

III.

Next, the Court turns to the Defendants' request in *Coleman* I for the entry of a summary judgment on all aspects of Coleman's claims. Under Federal Rule of Civil Procedure 56(c), a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." The burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing a summary judgment motion, the Court is obliged to examine all pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is the responsibility of the court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be

entered only if (1) the evidence suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

In bringing their motion, the Defendants immediately concede that the facts of this case have not been significantly developed. They proceed with their motion by asking the Court to rely almost exclusively on the representations by Lieutenant Mutchler in his "Internal Investigation Log," which was prepared by them after investigating the claims in Coleman's April 11, 2008 letter.[3] However, as Coleman properly notes, this document is unsworn and amounts to classic hearsay, which cannot be used to defeat a summary judgment motion. Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2009) ("evidence submitted in opposition to a motion for summary judgment must be admissible.' That is why "'[h]earsay evidence . . . must be disregarded.") (internal citations omitted). Moreover, nearly every legal issue raised by the Defendants' motion requires the Court to first resolve several fact intensive questions, including (1) an assessment of the circumstances which led the officers to conclude that they had probable cause to effectuate Coleman's arrest, (2) whether, based on Coleman's alleged injuries and conduct at the jail, the officers had reason to know of his medical condition and injuries,

---

[3]The Defendants also provide the Court with limited excerpts of Jamison's deposition testimony, which do not give any indication of the officer's conduct, decision making process, or intent.

9

and were deliberately indifferent to him by refusing to respond to his supposed requests for medical assistance, (3) if any Caucasian pretrial detainees were similarly situated to, or treated differently than Coleman, and (4) whether the Defendants had adequate training and supervision procedures in place prior to Coleman's arrest and detention. Absent a factual record from which these issues can be examined, the Court is unwilling to grant a request for the entry of a summary judgment. The Defendants' motion for a summary judgment must be, and is, denied without prejudice.

IV.

In *Coleman* II, the Defendants have filed a motion in which they ask the Court to consolidate this lawsuit with *Coleman* I. The Defendants support their request by citing Fed. R. Civ. P. 42(a), which allows a court, among other things, to consolidate two actions that "involve a common question of law or fact. . . ." In the view of the Defendants, consolidation would be appropriate inasmuch as these two cases involve identical or nearly identical facts, parties, and questions of law.

A district court, when considering such a request, should evaluate the following factors:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.,* 999 F.2d 1007, 1011 (6th Cir. 1993). Here, a reading of *Cantrell* reveals that the two lawsuits present substantially similar claims raised by the same plaintiff against the same police department arising out of the very same arrest. In both cases, the resolution of certain facts will be virtually indistinguishable, and the Court finds that it would prejudice the municipal Defendants to have to undertake separate discovery , motion practice, and trial. Thus, the Court believes that inasmuch as consolidating the actions will promote efficiency and reduce the risk of inconsistent adjudication of common factual and legal issues, the Defendants' request for a consolidation of the two actions in

10

*Coleman* I (Case No. 08-12993) and *Coleman* II (Case No. 09-14245) is appropriate.[4] *See generally, Carpenter v. GAF Corp.*, 16 F.3d 1218, *1 (6th Cir. 1994) (unpublished) ("Cases should be consolidated if the risks of prejudice and confusion are outweighed by other factors including 'the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources . . . .'") (*quoting Hendrix v. Raybestos-Manhattan*, Inc., 776 F.2d 1492, 1495 (11th Cir.1985)).

V.

Finally, the Court now turns its attention toward the Defendants' request to strike Coleman's first amended complaint in *Coleman* II. In support of their motion, the Defendants note that only after they had already answered the claims in the original complaint, Coleman filed a first amended complaint (1) without leave of the Court and (2) solely in response to their motion to consolidate in which his deficiencies had been identified. Coleman responds by noting that his failure to seek leave to amend was inadvertent, inasmuch as under state procedural rules in Michigan, a party may freely amend the complaint once as a matter of course, even after a responsive pleading has been filed.

The Court will deny the Defendants' motion inasmuch as under the amendments to Rule 15 of the Federal Rules of Civil Procedure which became effective on December 1, 2009, a party may now amend its pleadings once as a matter of course without seeking the permission of the Court, even after a responsive pleading has been filed:

    (a)    Amendments Before Trial.

    (1)    *Amending as a Matter of Course*. A party may amend its pleading once as a

---

[4]The Plaintiff does not object to the consolidation of the two cases as long as they are consolidated for purposes of trial only. However, the Court finds this distinction to be without meaning and believes that the arguments in support of consolidation are equally compelling during the pre-trial stage.

matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a). The Advisory Committee Notes to the 2009 amendments to Rule 15 indicate that "the right to amend once as a matter of course is no longer terminated by service of a responsive pleading[ ]," inasmuch as the responsive pleading "may point out issues that the original pleader had not considered and persuade the pleader that amendment is wise. Just as amendment was permitted by former Rule 15(a) in response to a motion," the amended rule permits "one amendment as a matter of course in response to a responsive pleading." *Id.* Because Coleman filed his first amended complaint on December 8, 2009, after the effective date of the amendment, he is permitted to take advantage of the-then new rule. The Defendants' motion to strike the first amended complaint therefore must be, and is, denied.

VI.

For the reasons stated above, in Case No. 08-12993, Coleman's motion for a default judgment (Docket Entry No. 49) is denied, and the Defendants' motion for a summary judgment (Docket Entry No. 50) is denied without prejudice. In Case No. 09-14245, the Defendants' motion to consolidate the cases (Docket Entry No. 7) is granted,, and the Defendants' motion to strike the first amended complaint (Docket Entry No. 10) is denied.

**IT IS THEREFORE ORDERED** that the following case 09-14245 is consolidated with civil number 08-12993 for all purposes, including trial.

**IT IS FURTHER ORDERED** that **all subsequent papers filed after the date of this order shall be entered on civil number 08-12993.**

**IT IS FURTHER ORDERED** that civil number 09-14245 is hereby closed for administrative purposes.

IT IS SO ORDERED.

Dated: September 30, 2010             s/Julian Abele Cook, Jr.
       Detroit, Michigan            JULIAN ABELE COOK, JR.
                                           United States District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2010.

                                            s/ Kay Doaks
                                            Case Manager